ROBERT W. THOMPSON, Esq. (SBN 106411)
KATHLEEN M. HARTMAN, Esq. (SBN 219934)
JIMMY T. NGUYEN, Esq. (SBN 312455)
**CALLAHAN, THOMPSON, SHERMAN**
  **& CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel    :        (949)  261-2872
Fax    :        (949)  261-6060
Email  :        rthompson@ctsclaw.com
                khartman@ctsclaw.com
                jnguyen@ctsclaw.com

Attorneys for Plaintiff,
**CYNTHIA KAO, individually and**
**on behalf of those similarly situated**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA KAO, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LG ELECTRONICS U.S.A., INC.<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) Violation of Consumer Legal Remedies Act**<br>**(2) Unlawful Business Practices in Violation of California Business & Professions Code §17200, *et. seq.***<br>**(3) False & Misleading Advertising In Violation of California Business & Professions Code §17500, *et. seq.***<br>**(4) Breach of Express Warranty**<br>**(5) Breach of Consumer Warranty Act California Civil Code §1790, *et, seq.***<br>**(6) Violations of The Magnuson-Moss Warranty Act**<br><br>**JURY TRIAL DEMANDED** |

- 1 -

Plaintiff CYNTHIA KAO, (hereinafter "Plaintiff"), on behalf of herself, and on behalf of all other similarly situated persons, allege the following facts and claims:

1.      This consumer class action arises out of Defendant LG ELECTRONICS U.S.A, INC.'s ("Defendant") misrepresentations through omission and failure to honor warranties with respect to Defendant's LG's refrigerator Model No. LFX31945ST, refrigerators with its Slim SpacePlus™ Ice System, and/or its Smart Cooling Plus System.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) and 18 U.S.C. § 1965.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy between the parties.

## THE PARTIES

4.      Plaintiff Cynthia Kao is, and at all material time was, a citizen of California and resident in the county of Orange, California.

5.      Defendant LG Electronics U.S.A., Inc. is a Delaware corporation with corporate offices at 1000 Sylvan Ave, Englewood Cliffs, NJ, 07632.  Defendant maintains a website at http://www.LG.com/us.

## STATUTES OF LIMITATIONS

6.      Any applicable statutes of limitation have been tolled by Defendant's continuing, knowing and active concealment of the facts alleged herein.  Defendant has concealed material information from Plaintiff and the Class that is essential to the pursuit of their claims, despite Plaintiff's and the Classes' due diligence.

## INTRODUCTION

7.      Defendant is in the business of manufacturing, producing, distributing, and/or selling refrigerators throughout the United States under the brand name LG Electronics.

- 2 -

COMPLAINT

8.      Defendant manufactured, produced and/or distributed refrigerators for sale by its network of authorized dealers including several leading retailers in the United States, such as Lowes, Home Depot, Best Buy, APT, Buy.com, PC Richard & Son, and other large retail chains, as well as through independently owned distributors.

9.      On or around the beginning of September 2014, Plaintiff purchased an LG refrigerator, Model No. LFX31945ST,[1] from Lowes located in Irvine, Orange County, California.  Plaintiff paid approximately $2,500 for the refrigerator.  Plaintiff used the refrigerator in her home for its intended purpose and in a manner consistent with its intended use.

10.     The refrigerator has a LG Slim SpacePlus™ Ice System ("Ice System"). The Ice System is located in the interior portion of the door of the refrigerator, giving the refrigerator more storage capacity than other refrigerators.  The Ice System makes and stores ice and has an external automatic ice dispenser that allows the consumer to obtain ice without opening the refrigerator door.   Plaintiff saw this feature and liked that it provided an in-door automatic ice dispenser without losing storage capacity.

11.     The refrigerator also has an LG Smart Cooling Plus System ("SCP").  The SCP is "designed to monitor and maintain conditions to help keep food fresh."  On the date that Plaintiff purchased the refrigerator, the sales person at Lowes pointed out that one of the features of the refrigerator was that it had different temperature zones in the refrigerator that could be regulated based on what was being stored in the temperature zone.  Some of the zones identified were a drawer for meat, a drawer for vegetables, and a drawer for buffet platters.  This was one of the features about the refrigerator that Plaintiff liked because it was supposed to help keep food fresh longer.  As stated by Defendant in its advertising, "[t]he Linear Compressor and Dual Evaporators [that are part of the SCP] react quickly to humidity and temperature levels and help keep your

---

[1] The term "Model" will refer to the LG's Model No. LFX31945ST and not just the refrigerator the Plaintiff purchased.

COMPLAINT

food fresher, longer. Meanwhile, strategically-placed vents in every section help to surround your food with cool, fresh air no matter where you put it."

12.     Within one year of owning and operating the refrigerator under normal household conditions, and as recommended by Defendant, the refrigerator began to have problems. The Ice System would repeatedly clog and become non-operational. When Plaintiff contacted Defendant about the problem she was told that in order to stop the clogs she would have to empty the ice tray every day. The refrigerator would also get various error messages and sometimes it would simply stop working. When this happened, Plaintiff was instructed by Defendant to unplug the refrigerator for at least 15 minutes and then plug it back in. Plaintiff was told by Defendant that this would reboot the refrigerator's control board. Sometimes Plaintiff would have to perform this unplugging, waiting, and re-plugging ritual multiple times to try to reboot the control board. When the refrigerator was unplugged and when it stopped working, the food in the refrigerator was not being cooled by the SCP. Because the food was not being cooled, it would spoil and ice would melt and leak onto the floor. As a result, the Ice System did not work properly.

13.     Even when the refrigerator was plugged in, the refrigerator would receive various error messages and the SCP would stop regulating the different temperature zones of the refrigerator. When this happens, the food begins to spoil and ice melts and leaks out of the refrigerator. When this happened, Plaintiff was instructed by Defendant to unplug the refrigerator for at least 15 minutes and then plug it back in. Plaintiff was told by Defendant that this would reboot the refrigerator's control board. Sometimes Plaintiff would have to perform this unplugging, waiting, and re-plugging ritual multiple times to try to reboot the control board. When the refrigerator was unplugged and when it stopped working, the food in the refrigerator was not being cooled by the SCP. Because the food was not being cooled, it would spoil and ice would melt and leak onto the floor. As a result, the SCP did not work properly.

COMPLAINT

14.     The plug for the refrigerator is located on the back of the refrigerator so it was not an easy task to unplug the refrigerator.  The refrigerator was heavy and it had to be moved out from the cupboard space and away from the wall and then moved back when it started up again.

15.     Defendant provides an express warranty for workmanship and materials. Defendant contracts with third party repair companies to provide repairs to consumers under the express warranty.   Defendant pays the third-party repair companies a one-time amount regardless how many times the refrigerators must be repaired.  A consumer will contact Defendant who will direct them to the third-party repair company servicing the consumer's location.  The third-party repair companies are disincentivized from troubleshooting, visiting, inspecting, or repairing a consumer's refrigerator after its first troubleshoot, visit, inspection, or repair.  In fact, it was customary for these third-party repair companies to delay the repair until the warranty period had expired before they repaired a refrigerator.  This way, the repair company would receive payment for the repair with the consumer's money where they would otherwise receive no additional payment from Defendant.  Defendant's behavior shows a conscious disregard for the rights of Plaintiff and the refrigerator consumers.

16.     As such, Defendant breached its express warranties, as set forth above, by selling and supplying the products in conditions which did not meet the warranty obligations undertaken by Defendant and by failing to adequately repair the products.

17.     Defendant also knew of the problems with the Ice System and SCP because it was involved in a prior class action lawsuit first filed on December 10, 2012, case no. 13-cv-0485 JM (JMA).  Defendant represented that it had the appropriate solutions to address the Ice System and SCP issues.  Accordingly, the parties entered into a settlement which was ultimately approved on May 18, 2015 by Honorable Jeffrey Miller. Notwithstanding the consumer complaints Defendant received that resulted in a class action lawsuit and the following settlement agreement, Defendant continues to manufacture refrigerators with a defective Ice System and SCP.

- 5 -

**CLASS ALLEGATIONS**

18.   Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Rule 23(a)(1) and (3) and Civil Code §1781.

19.   Plaintiff seeks to represent the following classes:

    a.   All persons in California who purchased an LG refrigerator for home use with the LG Smart Cooling Plus System within 4 years from the date this Complaint is filed and continuing to the date this action is resolved (California SCP Class).

    b.   All persons in California who purchased an LG refrigerator for home use with the LG Slim SpacePlus™ Ice System within 4 years from the date this Complaint is filed and continuing to the date this action is resolved (California Ice System Class).

    c.   All persons in California who purchased an LG refrigerator Model No. LFX31945ST within 4 years from the date this Complaint is filed and continuing to the date this action is resolved (California Model Class).

    d.   All persons in the United States who purchased an LG refrigerator for home use with the LG Smart Cooling Plus System within 4 years from the date this Complaint is filed and continuing to the date this action is resolved (Nationwide SCP Class).

    e.   All persons in the United States who purchased an LG refrigerator for home use with the LG Slim SpacePlus™ Ice System within 4 years from the date this Complaint is filed and continuing to the date this action is resolved (Nationwide Ice System Class).

    f.   All persons in the United States who purchased an LG refrigerator Model No. LFX31945ST within 4 years from the date this Complaint is filed and continuing to the date this action is resolved (Nationwide Model Class).

///

COMPLAINT

20. The California SCP Class, the California Ice System Class, the California Model Class, the Nationwide SCP Class, the Nationwide Ice System Class, and the Nationwide Model Class are collectively referred to as the "Classes."

21. The California SCP Class, the California Ice System Class, and the California Model Class are collectively referred to as the "California Classes."

22. Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest, and any of the Defendant's subsidiaries, affiliates, and officers, directors or employees and any legal representative, heir, successor, or assigns of Defendant.

23. The members of the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the court. While the exact number of members of the Classes are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that thousands of persons are members of the Classes.

24. There is a well-defined commonality of interest in questions of fact involving and affecting Plaintiff and the Classes which includes, without limitation:

   a. Whether Defendant made material omissions regarding extraordinary measures a consumer would need to take to keep the SCP, Ice System, and Model operational in order to make them fit for the ordinary purposes for which they were intended and used;

   b. Whether Defendant knew and/or recklessly disregarded the fact that the extraordinary measures were required to keep the SCP, Ice System, and Model operational;

   c. Whether Defendant engaged in unfair competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the SCP, Ice System, and Model;

   d. Whether Defendant violated the consumer protection statutes in California;

e.   Whether Defendant breached its implied warranties;

f.   Whether Defendant breached express written and/or representative warranties;

g.   Whether Defendant has been unjustly enriched;

h.   Whether Plaintiff and the Classes have suffered damages as a result of Defendant's conduct, and, if so, the appropriate amount thereof; and

i.   Whether as a result of Defendant's conduct, Plaintiff and the Classes are entitled to equitable relief or other relief, and, if so, the nature of such relief.

25.   The claims of Plaintiff alleged herein are typical of those claims by members of the Classes and the relief sought is typical of the relief which would be sought by members of the Classes.

26.   Plaintiff and her counsel will fairly and adequately represent and protect the interests of all members of the Classes.

27.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of rights of members of the Classes and the disposition of their interest through actions to which they were not parties.

28.   A single class action is superior to numerous individual actions as a means of adjudicating those claims.

## FIRST CAUSE OF ACTION

(By Plaintiff, individually and on behalf of the California Classes against Defendant)

### Violations of the California Consumer Legal Remedies Act

29.   Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Complaint as though fully set forth herein.

30.     Plaintiff, individually and on behalf of all similarly situated California Class members, and the general public seek injunctive relief for Defendant's violation of the California Consumer Legal Remedies Act, California Civil Code §§1750, *et seq.*

31.     The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers for personal, family or household use.

32.     Refrigerators constitute "goods" within the meaning of Civil Code §1761(a).

33.     Defendant constitutes a "person" within the meaning of Civil Code §1761(c).

34.     Plaintiff and the California Class are "consumers" within the meaning of the Civil Code §1761(d).

35.     Defendant's conduct as alleged herein constitutes a "transaction" within the meaning of Civil Code §1761(e).

36.     The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction and intended to result or which results in the sale or lease of goods…to any consumer are unlawful: (5) Representing that goods… have… characteristics, uses, benefits…which they do not have; …. (7) Representing that goods…are of a particular standard, quality or grade…if they are of another;… and (9) Advertising goods… with intent not to sell them as advertised."  Civil Code §§1770(a)(5), (7), and (9).

37.     Civil Code §1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code §1770.

38.     Under Civil Code §1780(e), Plaintiff may also recover attorneys' fees and costs according to proof at time of trial.

///

///

- 9 -

**Allegations for the California SCP Class**

39.     The SCP stops regulating the temperature in the different temperature zones of the refrigerator.  When this happens, the food begins to spoil and ice melts and leaks out of the refrigerator.   In order to restart the SCP, Plaintiff was regularly required to unplug the refrigerator, wait for at least 15 minutes, and then re-plug in the refrigerator.

40.     At no time prior to the purchase of the refrigerator was Plaintiff told that in order to keep the SCP operational, she would need to repeatedly unplug the refrigerator for at least 15 minutes.  Omission of this critical information was misleading and was done for the purpose of inducing Plaintiff and the California SCP Class into purchasing Defendant's refrigerators.

41.     Unplugging the refrigerator and re-plugging it in would only provide a temporary fix.  This exercise would need to be performed on a regular basis.

42.     Had Plaintiff known she would have to continually keep unplugging and re-plugging in the refrigerator to keep the SCP system operational, she would not have purchased the refrigerator.

43.     A reasonable consumer would want to know that this action was necessary in order to keep the SCP operational.  This is especially true because the refrigerator fell at the upper end of the price spectrum.

44.     Defendant had multiple opportunities to disclose the extraordinary measures necessary to keep the SCP operational.  This includes, but is not limited to, disclosure at the retail display of refrigerators with the SCP, on its websites, and at the point of purchase.

45.      Plaintiff and the California SCP Class reasonably relied on the representation that the refrigerator had the capability to regulate the temperature in various zones of the refrigerator and that this function would help keep food fresh longer than other refrigerators without the SCP technology.  In actuality, the SCP stops working completely or fails to regulate the temperature in the refrigerator because it causes food to defrost, ice to melt, and the refrigerator to become warm.

46.     Defendant knew that the SCP did not work as represented and did not have the qualities that were represented when it sold the product to Plaintiff and the California SCP Class.  Defendant has a phone number for customers to call to report problems. Customers had previously contacted Defendant to report problems with the cooling of the refrigerator because when Plaintiff called to report the problem she was told the fix was to unplug the refrigerator in order to reboot it.  This indicates Defendant was aware of the problem prior to Plaintiff's call and had developed a "fix."   Defendant's knowledge was further confirmed when Defendant sent out a service technician to perform warranty repairs to the refrigerator.  The service technician, who was hired by Defendant to perform warranty repairs and indicated to Plaintiff that he had performed many other repairs on Defendant's products, explained that the types of problems Plaintiff was experiencing were common to Defendant's refrigerators.

47.     Defendant also knew of the problem with the SCP because it tracks problems with its products.   When a customer calls Defendant to report a problem, a claim number is generated.  If a service technician is sent to perform repairs, the service technician must track by claim number the part and repairs performed.  Defendant must keep track of these claim numbers and the repairs performed as part of its ability to comply with its No Lemon Guarantee provided to members of the California Classes. Defendant referred to prior claims Plaintiff had made during their conversations so it was clear that Defendant kept track of calls it received.

48.     Plaintiff is also informed and believes that Defendant knew of the problem with the SCP because its warranty service providers must report to Defendant the types of problems encountered and obtain necessary equipment, instruction, and training to repair Defendant's products.

49.     Plaintiff is also informed and believes that Defendant knew of the problem with the SCP System because LG customers called its customer service line to complain. This is evidenced by numerous complaints lodged on various websites which document LG customers repeated calls to LG to complain about the SCP.  For example, on the

website consumeraffairs.com, 1,795 LG customers have posted reviews about their LG refrigerators, with 88% giving a one-star (out of five) rating; 4% giving it a two-star rating – and only 8% providing either a 3, 4 or 5-star rating.  Multiple posts by LG customers evidence their repeated calls to LG and LG's refusal or inability to repair the problems.  For example:

| | |
|---|---|
| https://www.amazon.com/ LG-LFX31945ST-Super-Capacity- French-Refrigerator/product-reviews/ B008I6TZRM/ref=cm_cr_getr_d_ paging_btm_3?ie=UTF8&reviewerType =all_reviews&pageNumber= 3&filterByStar=one_star&sortBy=recent On August 24, 2014, Big Rich Rules wrote: | "At first I liked it because it was very quiet & could barely hear it at all! But, **I had to Return it after multiple service calls to get the temperature to stay constant and at the set temperature. The service man advised me it was working perfect on each visit so I purchased three thermometers to put inside and one for the freezer. This proved I was correct and unit was not working properly. The mother boards were replaced and so was the ice maker but problems continued. On the last service call the service man decided to replace parts in the bottom freezer.** He could not get the draws inside the bottom freezer to pull out and advised me I had dropped a frozen package in the back of the freezer and this was stopping the draw from opening? I did not believe that. **On the last service call the draw was stuck again and the service man had to really** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**work to get it to pull out. The end result was that upon removing the back wall of the freezer, the whole inside frame was iced up with old brown colored 10-month-old ice which was so severe it had been blocking the draws from pulling out!** Right away I pulled out my iPhone and recorded pictures/video with sound which at times drowned out the TV in the back ground! (noise started months earlier) the ice got so bad it was now also hitting a cooling fan, according to the serviceman. None of this was visible unless the inside walls were removed and most of the bottom freezer disassembled! Good Luck when your warranty & extended warranty is over! I found the third door in the front was not useful. My replacement (different brand) enables me to put a gallon size container (milk etc.) on the inside door and I went with the two-draw freezer style, with a better organized bottom freezer. I think the days of having a refrigerator last for 10 years is over. Too many computerized parts now which all last about the same time regardless of how much you spend on

COMPLAINT

| | |
|---|---|
| | your unit." |
| https://www.consumeraffairs.com/homeowners/lg_refrigerator.html?page=25<br>Nelson of Lockport, NY, posted on May 19, 2014 | "I am on my second LG 30.5 Cu Ft Door in Door French Door Refrigerator with Ice and water dispenser LFX31945ST. Price over 2.5k. Thank god for Best buy return and exchange policy or I would be screwed. After reviewing website's recommendations claiming this LG was the #1 rated product, I soon came to realize those rating are mostly on features and design. The reviewers do not actually keep that refrigerator in house and truly test the quality and durability of the product. So I purchased my brand-new fridge - super excited. As a family of 5, I need something big and nice.<br><br>**During the next two weeks, my wife kept noticing the freezer was not maintain the temperature. Give you an example: anytime you take out, ice cream, I normally had to let it sit on the counter for a minute before I was able to scope it out. With my top of the line LG Fridge I can take the container and squeeze with my bare hands. Call the LG tech, replace the motherboard. 24 hours later the whole fridge failed, all food lost. Call Best** |

**buy, I believed in the product and the review. This must of been a unique experience. Today is day 14 and the freezer still does not freeze properly, sending it back. Never ever will look at LG for anything again.**"

50.     Defendant also knew of the problems with the SCP because it was involved in a prior class action lawsuit first filed on December 10, 2012, case no. 13-cv-0485 JM (JMA).  Defendant represented that it had the appropriate solutions to address the SCP issues.  Accordingly, the parties entered into a settlement which was ultimately approved on May 18, 2015 by Honorable Jeffrey Miller.  Notwithstanding the consumer complaints Defendant received that resulted in a class action lawsuit and the following settlement agreement, Defendant continues to manufacture refrigerators with a defective SCP.

51.     Defendant intended Plaintiff and the California SCP Class to rely on its representations that the SCP would regulate the temperature in the various zones of its refrigerators and keep the refrigerator cool without having to take extraordinary measures.  One of the reasons Plaintiff purchased the refrigerator with the SCP technology was because the temperature variations it offered were supposed to keep food fresh longer than other refrigerators without the SCP technology.  Defendant's own advertising claims the SCP keeps food fresh longer and that it is "cutting edge technology."  Defendant's advertising indicates that it is attempting to distinguish itself from other refrigerators and induce consumers to purchase its product by offering a new technology that other refrigerators do not have.

52.     Plaintiff and the California SCP Class have suffered and continue to suffer injury in fact and have lost money as a result of Defendant's omission in that they have overpaid for the refrigerators with the SCP, incurred additional operating expenses and/or would not have bought the refrigerators with the SCP had the Defendant disclosed that

the SCP was unable to perform its essential function of regulating the temperature in the refrigerator.  Further, when the SCP would stop functioning, frozen items and ice would melt.  The water would leak out of the refrigerator onto the floor.  This created a safety hazard and damage to the floor.  Food would also begin to spoil and would spoil.  Plaintiff was required to throw out a significant amount of food, which caused monetary loss.  Plaintiff was also not able to use a refrigerator that she bought for approximately $2,500 for extended periods of time.  Plaintiff is informed and believes that other members of the California SCP Class suffered similar injuries.

53.     Defendant's actions were intended to harm Plaintiff and the California SCP Class and were done with malice and conscious disregarding of Plaintiff and the California SCP Class's rights as stated herein.

54.     On behalf of herself and the California SCP Class, Plaintiff requests an order enjoining the methods, acts, or practices; attorney's fees and costs; and any other relief that the Court deems proper.

**Allegations for the Ice System Class**

55.     Ice gets clogged in the ice chute of the refrigerators and the Ice System stops working.  Plaintiff was told by Defendant that to prevent this she would have to regularly empty the ice tray.

56.     At no time prior to the purchase of the refrigerator was Plaintiff told that in order to keep the Ice System operational she would need to regularly empty the ice tray.  Plaintiff had never before been required to empty the ice tray in her previous refrigerators in order to keep the icemaker operational. Had Plaintiff known this action was required to keep the Ice System operational she would not have purchased the refrigerator.

57.     A reasonable consumer would also want to know that they would need to regularly empty the ice tray, in what was supposed to be an automated icemaker, in order to keep the Ice System operational.  This is especially true because the refrigerator fell at the upper end of the price spectrum and people who buy a refrigerator with an ice maker

reasonably want it to make ice and have ice available for use without having to regularly empty the icemaker or risk it clogging.

58.     Defendant had multiple opportunities to disclose the extraordinary measures necessary to keep the Ice System operational.  This includes, but is not limited to, disclosure at the retail display of refrigerators with the Ice System, on its websites, and at the point of purchase.

59.     Plaintiff and the California Ice System Class reasonably relied on the representation that the Ice System would function as an ice maker that would make and dispense ice.  In actuality, however, the Ice System would clog and the consumer would need to regularly dump the ice that it made in order to keep it operational.

60.     Defendant was aware of the extraordinary efforts that were required to keep the Ice System operational but failed to disclose these facts to Plaintiff and the California Ice System Class.  Defendant's knowledge is based on the following complaints on Defendant's own website:

| http://www.lg.com/us/refrigerators/lg-LFX31925ST-french-3-door-refrigerator<br>In 2012, Sheila 99 wrote: | "The refrigerator was purchased in Sept. 2011 and have been nothing but a headache. We have called repair due to loud motor noise, so fan was replaced. Then, **the icemaker started jamming and the ice was melting in the icemaker. Called repair for that issue.** We are continuously getting a message "ER, 1F", so **customer service said unplug refrig for 4 hours. Tried solution still having same issue.** I am gonna demand this product to be replaced b/c **we have had 7-8 service calls since purchase**. I feel that we have invested too much money for these problems. "LG PLEASE REPLACE THIS PRODUCT." **I have read the** |

| | |
|---|---|
| | **reviews and some of us are continuously having the same problems, so this should signal a red flag that your product is inferior.** This is just bad business not to satisfy your customers." |
| http://www.lg.com/us/refrigerators/lg-LFX31925ST-french-3-door-refrigerator<br><br>In July 2016, Kspeaker wrote: | **"We've only owned this refrigerator for less than 3 years and it's really been nothing but trouble. Ice maker gets jammed often but the bigger problem is the compressor. I just payed to have ice buildup removed (third time) so that the fan doesn't make a horrific, long lasting drill-like sound. There is also a pretty significant hum that often causes our glasses in the nearby cabinet to rattle. According to our serviceman today, this means the compressor is failing. All servicemen we've had come have basically said the same thing about this fridge and others similar...lots of trouble!"** |
| http://www.lg.com/us/refrigerators/lg-LFX31925ST-french-3-door-refrigerator<br><br>In January 2017, Ronald Rat wrote: | **"LG has attempted to fix going on 5 months NO ICE"** |

61.    It was further confirmed that Defendant knew of the problem with the Ice System when the service technician that Defendant sent to perform warranty repairs to the refrigerator said that Plaintiff's problems with her refrigerator are common.

62.    Defendant also knew of the problem with the Ice System because it hired warranty service providers to repair its products.   When a customer calls Defendant to

report a problem, a claim number is generated.  If a service technician is sent to perform repairs, the service technician must track by claim number the part and repairs performed. Defendant must keep track of these claim numbers and the repairs performed as part of its ability to comply with its No Lemon Guarantee provided to members of the California Classes.  Defendant referred to prior claims Plaintiff had made during their conversations so it was clear that Defendant kept track of calls it received.

63.     Plaintiff is also informed and believes that Defendant knew of the problem with the Ice System because its warranty service providers must report to Defendant the types of problems encountered and obtain necessary equipment, instruction, and training to repair Defendant's products.

64.     Plaintiff is also informed and believes that Defendant knew of the problem with the Ice System because LG customers called its customer service line to complain. This is evidenced by numerous complaints lodged on various websites which document LG customers repeated calls to LG to complain about the Ice System.  For example, on the website consumeraffairs.com, 1,795 LG customers have posted reviews about their LG refrigerators, with 88% giving a one-star (out of five) rating; 4% giving it a two-star rating – and only 8% providing either a 3, 4 or 5-star rating.  Multiple posts by LG customers evidence their repeated calls to LG and LG's refusal or inability to repair the problems.  Below are some examples of customer complaints:

| https://www.consumeraffairs.com/ homeowners/lg_refrigerator.html? page=23 David of Sherwood, AR, posted on Aug. 22, 2014 | "We own a French door LG with Ice in the door. The box worked flawlessly for the first two years. Since then it has been nothing but a long effort to get the ice maker to work. **There have been no less than 10 service calls trying to fix the ice maker. They replaced PC boards, ice makers, ice dispensers etc. etc. The final fix was a motherboard, ice controller board and a new** |

CTSC|law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

| | |
|---|---|
| | **door. This repair lasted about 3 weeks and then the box quit making cold and we lost all the food.** The service company that provided the repairs was competent enough, but the box is just a piece of junk. We had a terrible time just getting repair service for the last failure.<br><br>**According to our service contract we should have been given a new box after the third repair. I have called them time and again and cannot get them to move on replacing the box.** I cannot tell you how utterly frustrating it has been to get this box repaired. We were given a loaner box from Home depot after the LG quit entirely. The box is not working and we still have the loaner from Home Depot. Hurrah, for Home Depot. My only words for anyone who buys an LG is you better have another fridge and you better buy a good service contract. Forget about an ice maker, they just don't work." |
| http://www.consumeraffairs.com /homeowners/lg_refrigerator.html ?page=23<br>Karen of Olathe, KS posted on July 23, 2014 | "Bought LG's top end fridge in 2011. **Had multiple issues with ice maker working, compressor within the first year.** The LG technician ruined our wood floor and left dents all over it, which LG has paid for refinishing. **We've put up with not having enough ice from the beginning. BUT, this past weekend the ice** |

**maker quit, then the rest of the fridge stopped working. Had to throw out tons of food.** This was on a Saturday night, 7/20. We bought an extended warranty. **We've gone through the proper channels and the contracted repair company cannot come to look at the fridge until 7/30. I have to wait 10 days for service and be without a refrigerator.** That is unacceptable!

Shame on LG for charging huge fees for crappy products. Shame on Nebraska Furniture Mart for selling extended contracts to sub-par repair companies that treat a warranty like a welfare recipient. Shame on Mega Performance, the extended warranty provider and shame on Mr. Appliance in Overland Park, KS. Today is 7/22 and we are trying to figure out a plan and get this resolved, quickly. Customer service is lacking horribly in this country. People need to step up and be accountable and do the right thing."

65.     Defendant also knew of the problems with the Ice System because it was involved in a prior class action lawsuit first filed on December 10, 2012, case no. 13-cv-0485 JM (JMA).  Defendant represented that it had the appropriate solutions to address the Ice System issues.  Accordingly, the parties entered into a settlement which was ultimately approved on May 18, 2015 by Honorable Jeffrey Miller.  Notwithstanding the consumer complaints Defendant received that resulted in a class action lawsuit and the

COMPLAINT

following settlement agreement, Defendant continues to manufacture refrigerators with a defective Ice System.

66.     Defendant intended Plaintiff and the California Ice System Class to rely on its representations that the Ice System would act like an ice maker and make and dispense ice without having to take extraordinary measures.  One of the reasons Plaintiff and the California Ice System Class purchased refrigerators with the Ice System technology was because they could have an ice maker that dispenses ice without the ice maker taking up valuable storage space.

67.     Plaintiff and the California Ice System Class have suffered and continue to suffer injury in fact and have lost money as a result of Defendant's omission in that they have overpaid for the refrigerators with the Ice System, incurred additional operating expenses, and/or would not have bought the refrigerators with the Ice System had the Defendant disclosed the Ice System was unable to perform its essential function making and dispensing ice.  Further, when the Ice System would clog it would sometimes cause the motor to burn out and the refrigerator to become non-operational.  This would cause food to defrost and ice to melt.  Water would leak out of the refrigerator onto the floor. This created a safety hazard and damage to the floor.  Food would also begin to spoil. Plaintiff was required to throw out a significant amount of food, which caused monetary loss.  Plaintiff was also not able to use a refrigerator that she bought for approximately $2,500.  Plaintiff is informed and believes that other members of the California Ice System Class suffered similar injuries.

68.     Defendant's actions were intended to harm Plaintiff and the California Ice System Class and were done with malice and conscious disregarding of Plaintiff and the California Ice System Class's rights as alleged herein.

69.     On behalf of herself and the California Ice System Class, Plaintiff requests an order enjoining the methods, acts, or practices; attorney's fees and costs; and any other relief that the Court deems proper.

**California Model Class**

- 22 -

COMPLAINT

70.     The refrigerator Model No. LFX31945ST ("Model") does not operate as intended or advertised.  The Model does not continuously refrigerate products nor does it make or dispense ice properly without Plaintiff taking extraordinary steps to keep it operational.  Plaintiff was told by Defendant to unplug the refrigerator for at least 15 minutes and empty the ice tray.   Defendant also sent a service technician out to repair the problems with the refrigerator on numerous occasions.

71.     At no time prior to the purchase of Model was Plaintiff told of the extraordinary measures necessary to keep the refrigerator operating properly.  Omission of this critical information was misleading and was done for the purpose of inducing Plaintiff and the California Model Class into purchasing the Model.

72.     Had Plaintiff and the California Model Class known they would have to continually keep unplugging and re-plugging in the Model, dumping the ice tray, and having multiple service calls to keep Model operating they would not have purchased the refrigerator.

73.     A reasonable consumer would want to know that these actions were necessary in order to keep the Model operational.  This is especially true because the refrigerator fell at the upper end of the price spectrum.

74.     Defendant had multiple opportunities to disclose the extraordinary measures necessary to keep the Model operational.  This includes, but is not limited to, disclosure at the retail display of the Model, on its websites, and at the point of purchase.

75.     Plaintiff and the California Model Class reasonably relied on the representation that the Model would act as a refrigerator and would make and dispense ice.  In actuality, however, the Model does not continuously refrigerate products nor does it make and dispense ice properly.

76.     Defendant knew that the Model did not work properly when it sold the Model to Plaintiff.  Defendant was aware of customer complaints about the refrigerator from its own website.  It keeps track of these complaints by assigning claim numbers.  Defendant knew of the "fix" to the Model prior to Plaintiff's first complaint.  The service

1  technician authorized by Defendant to perform warranty repairs also said that the

2  problems Plaintiff was having were common.

3       77.    Defendant also knew of the problem with the Model because it hired

4  warranty service providers to repair its products.   When a customer calls Defendant to

5  report a problem, a claim number is generated.  If a service technician is sent to perform

6  repairs, the service technician must track by claim number the part and repairs performed.

7  Defendant must keep track of these claim numbers and the repairs performed as part of

8  its ability to comply with its No Lemon Guarantee provided to members of the California

9  Classes.  Defendant referred to prior claims Plaintiff had made during their conversations

10  so it was clear that Defendant kept track of calls it received.

11       78.    Plaintiff is also informed and believes that Defendant knew of the problem

12  with the Model because its warranty service providers must report to Defendant the types

13  of problems encountered and obtain necessary equipment, instruction, and training to

14  repair Defendant's products.

15       79.    Plaintiff is also informed and believes that Defendant knew of the problem

16  with the Model because LG customers called its customer service line to complain.  This

17  is evidenced by numerous complaints lodged on various websites which document LG

18  customers' repeated calls to LG to complain about the LFX31945ST Model.  For

19  example, on the website amazon.com, LG customers have posted reviews about their

20  ongoing problems with the Model and LG's refusal or inability to repair the problems.

21  Below are some examples of customer complaints:

| | |
|---|---|
| https://www.amazon.com/ LG-LFX31945ST-Super-Capacity- French-Refrigerator/product-reviews/ B008I6TZRM/ref=cm_cr_arp_d_ viewopt_srt?ie=UTF8&reviewerType= all_reviews&pageNumber= | **"I loved this refrigerator for the first year, but exactly 3 months later (and 3 months out of warranty) it started making a noise.** Everything I read about it said that it was ice buildup that the fan was hitting and to take the back panel out of the back of the freezer |

- 24 -

1&filterByStar=one_star&sortBy=recent

On November 17, 2016, Amazon Customer wrote:

and melt the ice. I didn't want to mess with it myself, so I called LG for a repair guy. **The first one who came said he needed to order a sensor and evaporator and it would cost me about $500. One week went buy and I followed up and the company said that the parts were not available. So LG got another guy to come out. He said I needed the same parts and had to order them. One week went by and I followed up and they also said that the parts were indefinitely on back order.**

**So after a NUMBER of calls being bounced around through customer service, an executive service rep finally helped me and got an LG employee repair guy (vs contractor) to come out. He did find ice and melted it. Three weeks later, it stopped working completely again. He was just here again yesterday and put in a new compressor. This morning the refrigerator is still not cooling and at this point, after dealing with this for 3 months and no repair guys know what the problem is or how to fix it, I finally am asking them to declare it a lemon and to**

| | |
|---|---|
| | **refund my $3k.** To be continued, but I will never buy another LG appliance again." |
| https://www.amazon.com/ LG-LFX31945ST-Super-Capacity- French-Refrigerator/product-reviews/ B008I6TZRM/ref=cm_cr_arp_d_ viewopt_srt?ie=UTF8&reviewerType= all_reviews&pageNumber= 1&filterByStar=one_star&sortBy=recent On November 17, 2016, H. K. Yildiz wrote: | "Do not buy this refrigerator! I love the design. Very spacious. Looks chic and everything ... BUT **It started to make a very loud noise after 6 months. I called the customer service, they didn't even ask me any questions. They knew what part needed to be changed. Next day the repairman arrived with a replacement part. Apparently, this model has this problem and they know it. It worked fine for a couple of months and later the problem repeated many times in 3 years. Today I am having same issue.** Very disappointing." |
| https://www.amazon.com/ LG-LFX31945ST-Super-Capacity- French-Refrigerator/product-reviews/ B008I6TZRM/ref=cm_cr_arp_d_ viewopt_srt?ie=UTF8&reviewerType= all_reviews&pageNumber= 3&filterByStar=one_star&sortBy=recent On November 17, 2016, Nelson Garro wrote: | "I have a family of 5 and needed a large capacity refrigerator and based on websites and product reviews. This LG fridge was rated #1. I soon realized when products are reviewed they do not keep them for an extended period of time to truly see how it performs after a week/month/year etc. After receiving my fridge **my wife started noticing the freezer was not freezing or holding the temp. Even after adjusting the** |

- 26 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**setting to (-6) and waiting over 48 hours for the temp to adjust I could still take out my ice cream and drinking thru a straw as it was a shake. Called LG they dispatch someone to my house right away the tech believed it was a mother board issue the compressor may not be getting the correct signal from the control panel. Swap it out it seem to be working for the next few hours - then a complete total failure both the Fridge and Freezer was not cooling at all. Complete shutdown.**

**Fridge was still within the exchange period with Best Buy and had it swap out for the same unit. How can two fridges fail on you. Nope within 14 days the second fridge died as well.** Thank goodness for Best Buy who came back and picked up this junk.

Oh I tried to post my review on LG and they rejected it without cause, no wonder on its site the fridge has 5 stars"

25    80.    Defendant also knew of the problems with the Ice System and SCP because

26  it was involved in a prior class action lawsuit first filed on December 10, 2012, case no.

27  13-cv-0485 JM (JMA). Defendant represented that it had the appropriate solutions to

28  address this specific Model's issues. Accordingly, the parties entered into a settlement

- 27 -

1  which was ultimately approved on May 18, 2015 by Honorable Jeffrey Miller.

2  Notwithstanding the consumer complaints Defendant received that resulted in a class

3  action lawsuit and the following settlement agreement, Defendant continues to

4  manufacture this defective Model.

5      81.    Defendant intended Plaintiff and the California Model Class to rely on its

6  representations that the Model would actually function like a refrigerator without having

7  to take extraordinary measures.  Defendant calls the Model a refrigerator, the refrigerator

8  is displayed with other refrigerators, Plaintiff was told at the time of purchase that the

9  refrigerator had a special feature for regulating temperature, and that it has an ice maker

10 that makes, stores, and dispenses ice. The Model itself looks like it has an ice maker that

11 makes, stores, and dispenses ice.

12     82.    Plaintiff and the California Model Class have suffered and continue to

13 suffer injury in fact and have lost money as a result of Defendant's omission in that they

14 have overpaid for the Model, incurred additional operating expenses and/or would not

15 have bought the Model had the Defendant disclosed the Model was unable to perform its

16 essential function of refrigeration and making, storing, and dispensing ice.  When the

17 Model stopped functioning, frozen items and ice would melt.  The water would leak out

18 of the refrigerator onto the floor.  This created a safety hazard and damage to the floor.

19 Food would also begin to spoil.  Plaintiff was required to throw out a significant amount

20 of food, which caused monetary loss.  Plaintiff was also not able to use a refrigerator that

21 she bought for approximately $2,500.  Plaintiff is informed and believes that other

22 members of the California Model Class suffered similar injuries.

23     83.    Defendant's actions were intended to harm Plaintiff and the California

24 Model Class and were done with malice and conscious disregarding of Plaintiff and the

25 California Model Class's rights as stated herein.

26     84.    On behalf of herself and the California Model Class, Plaintiff requests an

27 order enjoining the methods, acts, or practices; attorney's fees and costs; and any other

28 relief that the Court deems proper.

1   ///

2   ///

3                    **SECOND CAUSE OF ACTION**

4        (By Plaintiff, individually and on behalf of the California Classes)

5        **Violations of Cal. Bus. & Prof. Code §17200,** *et seq.*

6        85.    Plaintiff hereby restates, re-alleges, and incorporates by reference herein the

7   paragraphs stated above in this Complaint as though fully set forth herein.

8        86.    Plaintiff, individually and on behalf of all similarly situated California

9   Class members, and the general public, brings this cause of action pursuant to California

10  Business and Professions Code §17200, *et seq.*

11       87.    The Unfair Business Practices Act defines unfair business competition to

12  include any "unfair," "unlawful," or "fraudulent" business act or practice.  California

13  Bus. & Prof. Code §§17200 and 17500, *et seq.*  The Act also provides for injunctive relief

14  and restitution for violations.

15       88.    Defendant has engaged in unlawful, unfair and/or fraudulent business acts

16  and practices as set forth above.

17       89.    Defendant's conduct constitutes unfair business acts and practices because

18  Defendant's practices as described herein have deceived and/or were likely to deceive

19  Plaintiff and the California Class, and other members of the consuming public.  At no

20  time prior to the purchase of SCP, Ice System, or Model was Plaintiff or the California

21  Classes told that extraordinary measures were required to keep the products operational.

22  Failure to disclose this information constitutes material omissions of facts that a

23  reasonable consumer would to know prior to the purchase of the products.

24       90.    Further, Defendant's acts and practices are unlawful because they violate or

25  violated one or more of the following: California Civil Code §§1790, *et seq.*; Civil Code

26  §1750, *et seq.*; California Uniform Commercial Code §2313; and California Bus. & Prof.

27  Code §§17200 an d17500, *et seq.*

28

COMPLAINT

91.     Defendant's acts and practices are fraudulent in that it knowingly failed to disclose material facts that a reasonable consumer would want to know prior to the purchase of the products.

92.     The injury to Plaintiff and the California Classes greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.   The injury clearly constitutes substantial injury as the products develop serious problems which require costly repairs and losses to the California Classes and extraordinary measures to keep operational.  There is no benefit to the consumers by allowing Defendant to knowingly market and sell products without disclosing material facts that a reasonable consumer would want to know.

93.     Plaintiff and the California Classes seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.*, plus interest, attorneys' fees and costs under California Code of Civil Procedure section 1021.5.

## **THIRD CAUSE OF ACTION**

### (By Plaintiff, individually and on behalf of the California Classes)

### **Violations of Cal. Bus. & Prof. Code §17500,** *et seq.*

94.     Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Complaint as though fully set forth herein.

95.     Plaintiff, individually and on behalf of all similarly situated members of the California Classes, and the general public, brings this cause of action pursuant to the California Business and Professions Code §17500 *et seq.*

96.     The misrepresentations by omission by Defendant of the material facts detailed above constitute false and misleading advertising by omission and therefore constitute a violation of California Bus. & Prof. Code §17500, *et seq.*

97.     At all times relevant, Defendant's material omissions were likely to deceive consumers into purchasing refrigerators with the SCP and Ice System and purchasing the Model.

- 30 -

98.     Plaintiff and the California Classes have suffered injury in fact and have lost money or property as a result of Defendant's unfair advertising of the Refrigerators, as more fully set forth herein.  These injuries are ongoing in that Plaintiff and the California Classes continue to have problems with the SCP, Ice System, and Model and Defendant continues to fail to disclose the extraordinary measures that must take place to keep the Refrigerator operational.

99.     Unless Defendant is enjoined from continuing to engage in such wrongful actions and conduct, members of the California Classes will continue to be damaged by Defendant's false and /or misleading advertising by omission.

100.    Plaintiff and the California Classes seeks an order requiring Defendant to make full restitution of all monies wrongfully obtained and disgorge all ill-gotten revenues and/or profits, together with interest thereon and costs under California Code of Civil Procedure section 1021.5.

## FOURTH CAUSE OF ACTION

(By Plaintiff, individually and on behalf of the California Classes)

**Breach of Express Warranty under the Song Beverly Act, Cal. Civ. Code §1790, *et seq.*, Cal. Comm. Code §2313, and California Common Law**

101.    Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Complaint as though fully set forth herein.

102.    Plaintiff, individually and on behalf of all similarly situated California Class members, and the general public seeks recovery for Defendant's breach of express warranty under the laws of the State of California.

103.    Defendant's express written warranty states: "[s]hould your LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period set forth below, LG will at its option repair or replace the product."

104.    Plaintiff provided Defendant repeated opportunities to repair the SCP, Ice System, and Model within the warranty period.  Her first phone call to Defendant

concerning problems with the refrigerator was during the first year of ownership.   She made multiple calls thereafter.  On multiple occasions when Plaintiff would call to report problems with the refrigerator, Defendant told Plaintiff to unplug the refrigerator, wait, and then plug it back in.  This "fix" would be for various problems with the refrigerator, including when the refrigerator would make a loud noise like it was a plane taking off, when it would start to vibrate, when the control panel would start to flash, or when various error codes (such as "ER" or "Error Code FF") would appear.  When the ice maker would clog, Defendant would tell Plaintiff she needed to dump the ice in the ice maker every day so it would not get too full.

105.    In January 2016 Defendant finally decided to send a service technician to look at the refrigerator.  The service technician determined at that time the Refrigerator's issues stemmed from the ice fan's motor.   These repairs were made to the refrigerator. Plaintiff was required to pay out-of-pocket expenses for the repairs.

106.    Plaintiff continued to have problems with the refrigerator even after the repairs so she continued to contact Defendant.  In early March 2017, Plaintiff's Refrigerator began exhibiting problems again.

107.    After Defendant's repeated failure to correct the problems, Plaintiff requested Defendant provide her with a new refrigerator.  Defendant refused claiming that *Plaintiff* was required to report the *exact* same problem at least three times before Defendant would even consider replacing the refrigerator.

108.    Defendant failed to honor its express warranty to repair or replace the product.   Any purported repair that Defendant made was itself defective because the repair failed and problems persisted.  When Plaintiff sought replacement of the refrigerator, Defendant refused.  Defendant has failed to comply with Song-Berverly Act, Civil Code §1793.2(b) and (d), Cal. Uniform Commercial Code § 2313, and California Common Law.

109.    Plaintiff and the California Classes relied on the express written warranties and Defendant has failed to satisfy its obligations under the express written warranties by not adequately repairing and/or replacing the products.

110.    Defendant had no motivation to fix the products because it entered into contracts with repair companies whereby Defendant paid them a one-time amount regardless how many times the Refrigerators had to be repaired.   Defendant's behavior shows a conscious disregard for the rights of Plaintiff and the California Classes.

111.    Defendant breached its express warranties, as set forth above, by selling and supplying the products in conditions which did not meet the warranty obligations undertaken by Defendant and by failing to adequately repair the products.

112.    Defendant has received complaints and other notices from its customers advising Defendant of the same problems that Plaintiff experienced with her Refrigerator. Despite the notice and Defendant's knowledge, Defendant refused to honor its warranties.

113.    Even if notice was not given, or is somehow deemed defective, notice should be excused because of Defendant's knowledge of the problems with the products as alleged herein and because notice would have been and is futile as evidenced by Defendant's policy and practice of not adequately repairing or replacing the products.

114.    Plaintiff contacted Defendant regarding the problems with her refrigerator and how it failed to operate as intended upon discovery of those problems.   Thus, Plaintiff provided timely notice of the breaches of warranty alleged herein pursuant to California Commercial Code §2607(3)(A).

115.    Plaintiff and the California Classes were intended third-party beneficiaries of the expressed warranty made by Defendant.  Defendant, who is the manufacturer of the Model and the refrigerators that use the SCP and Ice System, knew that the retailers to whom it sold these products to were not going to own the products any longer than it took to sell them to Plaintiff and the California Classes.  Further, Defendant intended the

- 33 -

COMPLAINT

express warranty to be for the benefit of the Plaintiff and the California Classes, e.g. the consumers of the products.

116. As a proximate result of Defendant's breach of express warranty, Plaintiff and the California Classes have sustained damages and other losses in an amount to be determined at trial. Plaintiff and the California Class are entitled to recover damages pursuant to Civil Code §1794, including, attorneys' fees, rescission and other relief as is deemed appropriate. Plaintiff and the California Class are also entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION

(By Plaintiff, individually and on behalf of the California Classes)

**Breach of Implied Warranty under the Song Beverly Act Cal. Civ. Code §1790, *et seq.*, Cal. Uniform Comm. Code §2314, and California Common Law**

117. Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Complaint as though fully set forth herein.

118. Plaintiff, individually and on behalf of all persons similarly situated and the general public seeks recovery for Defendant's breach of the implied warranty.

119. Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1792 *et seq.*, every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable.

120. The refrigerator and the parts contained therein are "consumer goods" within the meaning of Cal. Civ. Code §1791(a).

121. Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §1791(j).

122. Plaintiff and the California Classes bought the Model and/or the refrigerators with the SCP and Ice System at retail stores in the State of California.

123. At the time of sale, and currently, Defendant is in the business of manufacturing and selling refrigerators with the SCP and Ice System.

- 34 -

124.    There is privity between Defendant, Plaintiff and the California Classes by Defendant's direct warranties and/or because Plaintiff and the California Classes were intended third-party beneficiaries of the implied warranty made by Defendant.  Defendant knew that the retailers to whom it sold the refrigerators with the SCP and Ice System were not going to own the refrigerators any longer than it took to sell them to Plaintiff and the California Classes.  Further, Defendant intended that the implied warranty that applied to the refrigerators was for the benefit of the Plaintiff and the California Classes.

125.    By operation of law, Defendant impliedly warranted to Plaintiff and the California Classes that its Model, SCP, and Ice System were of merchantable quality and fit for the ordinary purposes for which they are intended and used.  Defendant breached the implied warranty at the time of sale.

126.    Defendant knowingly and/or recklessly sold the Model and refrigerators with the SCP and Ice System that were not fit for the ordinary purposes for which they were intended and used.  As alleged herein, Defendant possessed actual superior knowledge that the Model, SCP, and Ice System did not work as intended.  Defendant's waiver and/or limits on implied warranties are unconscionable, illegal, and unenforceable, since Plaintiff and the California Classes had no meaningful choice in determining those time limitations.

127.    To the extent that Defendant may claim that it disclaimed the implied warranties under the Song Beverly Act, such disclaimer is invalid under California Civil Code §§ 1790.1, 1791.3, 1792.3 because there was no disclaimer provided that the Model, SCP, and/or Ice System were being sold "as is" or "with all faults."

128.    To the extent that Defendant may now claim that it excluded or modified the implied warranties under the California Uniform Commercial Code, such waiver is invalid because it was not conspicuous as required by California Uniform Commercial Code § 2316(2).  Plaintiff was not made aware of any waiver of implied warranties at the time of her purchase of the refrigerator.  The manual for the refrigerator was packed inside the refrigerator box and was not provided to her until after her purchase of the

- 35 -

refrigerator.  There was no posting of any warranty disclaimer on the refrigerator and no one mentioned any warranty disclaimer at the time of the purchase.

129.    Plaintiff was not provided the option to purchase additional warranty coverage from Defendant at the time of purchase.  It was only until Plaintiff contacted Defendant that Defendant offered their LG Premium Repair and Protect to extend the limited one year express warranty for up to three additional years.  Plaintiff and the California Classes had no way to obtain additional coverage for the warranties of the merchantability or fitness of the Model, SCP, or Ice System for a particular purpose from Defendant.  Further, Defendant refused to honor its express warranty because it refused to adequately repair or replace the refrigerator.

130.    Plaintiff did not have the option of purchasing another refrigerator with the same space, layout, design, lighting, features, SCP, Ice System, or look as the one available from Defendant.  Plaintiff is informed and believes that Defendant patents its products so that others cannot copy them.

131.    As a proximate result of Defendant's breach of implied warranty, Plaintiff and the California Classes have sustained damages and other losses in an amount to be determined at trial.  Plaintiff and the California Classes are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, rescission, and other relief as is deemed appropriate.

132.    Plaintiff and the California Classes also seek punitive damages since Defendant acted with malice, oppression and fraud in performing the conduct set forth above.

### SIXTH CAUSE OF ACTION

(By Plaintiff, individually and on behalf of the Classes against Defendant)

**Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§2301, *et seq.*) – Breach of Written Warranty**

133.    Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Complaint as though fully set forth herein.

134.    Plaintiff, individually and on behalf of all similarly situated members of the Classes, and the general public seeks recovery for Defendant's breach of written warranty under the laws of the Magnuson-Moss Warranty Act.

135.    The Refrigerators are "consumer products" as that term is defined under 15 U.S.C. §2301(3).

136.    Plaintiff and the members of the Classes are "consumers" as that term is defined by 15 U.S.C. §2301(3), and utilized the Model, SCP, and Ice System for personal and household use and not for resale or commercial purposes.

137.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. §2301(4) and (5).

138.    Defendant provided Plaintiff and the Classes with "written warranties" as that term is defined by 15 U.S.C. §2301(7).

139.    In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that is not permitted by law.

140.    By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

141.    Plaintiff and the Classes fulfilled their obligations under the Warranties.

142.    As a result of Defendant's breach of warranties, Plaintiff and the Classes are entitled to revoke their acceptance of the Model, SCP, and Ice System, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. §2301.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff and the Classes pray for judgment against Defendant as follows:

1.  An order certifying that the action may be maintained as a class action as defined herein;

2. For all recoverable compensatory, punitive, and other damages sustained by Plaintiff and the Classes;

3. For all actual and/or statutory damages for injuries suffered by Plaintiff and the Classes in the maximum amount permitted by applicable law.

4. An order requiring restitution of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations.

5. For statutory pre-judgment and post-judgment interest on any amounts;

6. For an order enjoining Defendant wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above and to require Defendant to engage in a corrective notice campaign;

7. For payment of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure §1021.5;

8. For costs of suit;

9. For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: July 12, 2017

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By     *s/Robert Thompson*
ROBERT W. THOMPSON
Attorneys for Plaintiff
**CYNTHIA KAO, individually and on behalf of the Classes**